UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JOHN NAGEL, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:15-CV-36-PRC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff John Nagel on January 28, 2015, and a Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 14], filed on June 1, 2015. Plaintiff requests that the September 25, 2013 decision of the Administrative Law Judge denying his claim for supplemental security income be reversed and remanded for further proceedings. On September 10, 2015, the Commissioner filed a response, and Plaintiff filed a reply on September 23, 2015. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

Plaintiff filed an application for supplemental security income on October 3, 2011, which is his alleged onset date. His claim was denied initially and upon reconsideration. Plaintiff timely requested a hearing, which was held on July 12, 2013. The hearing was conducted by video with Plaintiff sitting in Valparaiso, Indiana, and Administrative Law Judge (ALJ) Yvette N. Diamond sitting in Baltimore, Maryland. Also in attendance were Plaintiff's attorney and an impartial vocational expert. On September 25, 2013, the ALJ issued a written decision denying benefits, making the following findings:

1. The claimant has not engaged in substantial gainful activity since October 3, 2011, the application date.

2. The claimant has the following severe impairments: spinal stenosis, status post cervical fusion, left upper extremity weakness, headaches, and anxiety disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can lift and carry twenty pounds occasionally and ten pounds frequently; stand or walk for six out of eight hours; and sit for six out of eight hours. The claimant can occasionally push and pull. He can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, but cannot climb ladders. The claimant requires the option to sit or stand at will without leaving the workstation. He can frequently reach and handle bilaterally, and can occasionally finger with the left upper extremity. The claimant can have no concentrated exposure to hazards and temperature extremes. Finally, he is limited to low stress work defined as occasional decisionmaking and occasional changes in work setting.

5. The claimant has no past relevant work.

6. The claimant was born [in 1963] and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age.

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

>       10.     The claimant has not been under a disability, as defined in the Social Security
>               Act, since October 3, 2011, the date the application was filed.

(AR 69-76).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the

question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

# DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. § 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal and remand for further proceedings, or alternatively an award of benefits, arguing that the ALJ made errors in assessing Plaintiff's credibility, weighing medical opinion evidence, and determining Plaintiff's RFC.

### A. Credibility

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. § 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

7

*See* 20 C.F.R. § 416.929(c)(3). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

As an initial matter, Plaintiff attacks the ALJ's use of boilerplate language in the credibility determination. The Seventh Circuit Court of Appeals has often criticized this language. *See, e.g.*, *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015). But an ALJ's use of the boilerplate language does not amount to reversible error if she "otherwise points to information that justifies [her] credibility determination." *Pepper*, 712 F.3d at 367-68. Accordingly, the Court proceeds to consideration of the substance of the ALJ's analysis.

Plaintiff presents three arguments for finding the substance of the ALJ's credibility determination in error: (1) the ALJ made an improper negative inference regarding treatment not sought by Plaintiff, (2) the ALJ did not properly explain her view of the medications prescribed to Plaintiff, and (3) the ALJ drew improper conclusions from Plaintiff's daily activities. The Court will address each in turn.

8

*1. Failure to Seek Treatment*

The ALJ discredited the severity of Plaintiff's anxiety because his record shows no therapy or counseling sessions. An ALJ is not permitted to make negative inferences regarding a plaintiff's credibility based on the Plaintiff's failure to seek treatment without first giving the plaintiff an opportunity to explain why the treatment at issue was not sought. *Roddy*, 705 F.3d at 638; SSR 96-7p. The strength of Plaintiff's argument is bolstered by the Commissioner's failure to respond to this argument. The ALJ's negative inference is in direct conflict with precedential case law. Remand is required.

*2. Medication and Side Effects*

Though the ALJ did not explain how she viewed Plaintiff's prescription medications in making her credibility analysis, Plaintiff argues that his history of receiving prescriptions for strong medication—including Vicodin, OxyContin, Methadone, Noramprim, and Neurontin—should be a reason to find his complaints of pain credible. Plaintiff's argument is well taken. When evaluating the credibility of a claimant's statements, an ALJ must consider medications taken for pain. 20 C.F.R. § 416.929(c). Further, it is improbable that Plaintiff would be able to fake pain so severe to warrant prescription of strong medication or that his doctor would prescribe these medications if he believed Plaintiff was faking his symptoms. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004). In assessing Plaintiff's credibility on remand, the ALJ should consider the strong pain medications prescribed to Plaintiff.

Relatedly, Plaintiff argues that the ALJ improperly failed to consider how the potential side effects of his medications could affect his ability to work. Plaintiff is correct that SSR 96-7p requires an ALJ to consider side effects of medication taken in making a credibility determination. In this

9

context, however, the ALJ must consider side effects "not for their effects on a claimant's ability to work, but for the support they lend an individual's allegation of intense symptoms." *Brooks v. Colvin*, No. 2:12-cv-206, 2014 WL 1319442, at *10 (N.D. Ind. Mar. 27, 2014). Plaintiff has not shown any connection between the potential side effects of his medications and his credibility. Plaintiff's argument that the potential side effects implicate his ability to sustain employment attempts to stretch the requirement to consider side effects beyond its scope, and the argument fails.

3. *Activities of Daily Living*

Plaintiff argues the ALJ erred by relying on Plaintiff's following activities in finding Plaintiff not fully credible: mowing the lawn, preparing light meals, watching television, attending parent-teacher conferences, attending dances with his daughters, playing with his granddaughter, caring for a pet, and interacting with friends and family members.

The Seventh Circuit Court of Appeals has repeatedly cautioned ALJs against relying on daily activities as proof that a claimant can work full-time, eight hours a day, forty hours a week. *See Engstrand v. Colvin*, 788 F.3d 655, 661-62 (7th Cir. 2015); *Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014); *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014); *Roddy*, 705 F.3d at 639; *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010). "The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office." *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006).

The proper way to use activities of daily living in making a credibility determination is to contradict descriptions of pain or symptoms, not to conclude that a plaintiff can engage in sustained work activity. *See Zurawski*, 245 F.3d at 887. The ALJ did not make proper use of the evidence of daily activities, as shown by her explanation that "[s]ome of the physical and mental abilities and

10

social interactions required in order to perform [the Plaintiff's daily] activities are the same as those necessary for obtaining and maintaining employment." (AR 72).

Additionally, there are problems with the ALJ's characterization of Plaintiff's activities. The ALJ ignored Plaintiff's testimony that he no longer took care of the family dog, mowed the lawn, or did laundry. The ALJ overstated other activities performed by Plaintiff: he attended one father-daughter dance but sat on the sidelines, and he went to one parent-teacher conference. The ALJ implied that these were regular, or at least repeated, activities. The ALJ has improperly extrapolated an ability to perform work in a competitive environment from Plaintiff's activities of daily living and has mischaracterized the level and currentness of these activities. These defects are another ground upon which to remand this matter.

## B. Weight to Medical Opinions

An ALJ is required to evaluate every medical opinion received, regardless of its source. *See* 20 C.F.R. § 416.927(c). Factors the ALJ considers in weighing medical opinion evidence include the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention. *Id*. § 416.927(c)(1)-(6). Under what is known as the "treating physician rule," the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 20 C.F.R. § 416.927(c)(2).

11

Plaintiff contends that the ALJ erred in assigning little weight to the medical opinions of Dr. John Heyer and in assigning some weight to the medical opinion of Dr. J. Sands. The Court will address the opinions in turn.

*1. Dr. Heyer*

Plaintiff asserts that the ALJ did not engage in the proper analysis in assigning weight to Dr. Heyer's medical opinions and that the ALJ has failed to provide a sound explanation for giving the weight assigned. Though Dr. Heyer—Plaintiff's treating physician—gave two medical opinions, the ALJ did not explain why she did not assign controlling weight to the opinions. The ALJ assigned "little weight" to the opinions and gave the following reasons in support: (1) "whether the claimant is 'disabled' is a determination reserved to the Commissioner," (2) "Dr. Heyer's opinion is not supported by the treatment notes," and (3) the opinions are not supported by "the claimant's testimony regarding his activities of daily living." (AR 75). The Court agrees with Plaintiff regarding the ALJ's assignment of weight to Dr. Heyer's opinions. The ALJ has not provided a sound explanation for giving them only "little weight."

While qualification for supplemental security income is a question of law for the ALJ to determine, qualification "depends on the applicant's physical and mental ability to work full time, and that is something to which medical testimony is relevant and if presented can't be ignored." *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013) (finding error in an ALJ's assignment of no weight to a treating physician's opinion that a plaintiff was "disabled and unable to perform any functions"). The fact that the opinion goes to the ultimate issue of disability is not an acceptable reason to reject an opinion.

Though the ALJ wrote that the treatment notes do not support Dr. Heyer's opinions, the ALJ does not identify, in this portion of the decision, which treatment notes do not support which portions of Dr. Heyer's opinions. The ALJ has not sufficiently articulated her analysis in this regard for the Court to be able to trace her reasoning. *See Scott*, 297 F.3d at 595; *Diaz*, 55 F.3d at 307; *Green*, 51 F.3d at 101. The weight given to Dr. Heyer's opinions cannot be affirmed on this basis.

Next, as addressed above in the analysis of the ALJ's credibility determination, the ALJ's use of Plaintiff's activities of daily living involves mischaracterization of the evidence of record and is counter to legal precedent of the Seventh Circuit Court of Appeals. This reason is also insufficient ground to give Dr. Heyer's opinions little weight.

Finally, Plaintiff contends that the ALJ did not weigh this opinion pursuant to the factors in 20 C.F.R. § 416.927(c). The ALJ did address the supportability of the opinions, though the Court has addressed errors in the ALJ's supportability analysis above. However, the Plaintiff is correct that the ALJ did not address the nature, length, or frequency of Dr. Heyer's treating relationship with Plaintiff. On remand, should the ALJ not assign controlling weight to Dr. Heyer's medical opinions, the ALJ should address all of the checklist factors in assigning weight to the opinions. *See Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (finding error where the ALJ failed to explicitly address the checklist of factors).

2.   *Dr. Sands*

Plaintiff argues that it was error for the ALJ to give "some weight" to Dr. Sands's opinion because Dr. Sands did not have all relevant evidence available to him. Though the ALJ said she was only giving some weight to the opinion, the ALJ adopted the RFC opined by Dr. Sands except for his finding regarding Plaintiff's ability to lift and carry.

13

An ALJ cannot rely on outdated assessments and ignore new and potentially decisive medical evidence. *Stage v. Colvin*, No. 15-1837, 2016 WL 492333, at *3, — F.3d — (7th Cir. Feb. 9, 2016) (citing *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)). Dr. Sands's opinion is dated November 29, 2011. On April 23, 2013, before the ALJ issued her opinion, Dr. Heyer advised Plaintiff that he believed that Plaintiff has a myofascial pain syndrome such as fibromyalgia. As a result of this belief, Dr. Heyer prescribed Lyrica to Plaintiff. This information was not a part of the record at the time Dr. Sands reviewed it.

The Commissioner argues that the reference to a myofascial pain syndrome is merely Dr. Heyer's speculation and cannot be used to undermine the ALJ's decision. While the Commissioner is correct that Plaintiff has not identified a formal diagnosis of fibromyalgia in the record, it is unfair to classify the treatment note as mere speculation. Dr. Heyer prescribed medication for the condition, which indicates Dr. Heyer was taking his belief that Plaintiff had the condition seriously.

The ALJ makes no mention of either fibromyalgia or a myofascial pain syndrome in her decision, and no medical opinion was given after Dr. Heyer noted his belief that Plaintiff has a myofascial pain syndrome. The ALJ is not a medical professional and should not have taken it upon herself to decide the information regarding Plaintiff's possible myofascial pain syndrome could be ignored. It was error for the ALJ to give such great weight to an opinion that did not have access to the potentially decisive medical evidence. Remand is required on this basis.

Plaintiff also argues that there was new and potentially decisive medical evidence of deterioration of Plaintiff's left hand, including notes from a July 2012 examination indicating that Plaintiff experienced increased difficulty in grasping and the hand became numb more quickly. (AR 413). Dr. Sands's opinion was issued before this examination date. On remand, if the opinion of a

state agency medical consultant is sought, a new opinion by a medical consultant with access to the entire record is necessary.

### C. RFC Determination

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*.

Plaintiff alleges errors in the ALJ's determination of Plaintiff's RFC. Because this case is being remanded for new assessments of the medical opinions and of Plaintiff's credibility, the ALJ's

RFC finding may change significantly when revisited. Accordingly, an in-depth analysis of the arguments Plaintiff makes for remand based on the RFC finding is not necessary.

Even so, the Court will provide additional guidance on a couple of matters. First Plaintiff argues there is an evidentiary deficit regarding his ability to lift and carry because no medical opinion matches the limitation identified by the ALJ and the ALJ found Plaintiff not fully credible. However, the RFC determination is reserved to the ALJ as fact-finder for the Commissioner and need not be based on a specific medical opinion, though the ALJ must specify evidence of record that supports the RFC. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (recognizing that an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians (citing *Diaz*, 55 F.3d at 306, n.2)); 20 C.F.R. § 416.927(e)(2).

Second, Plaintiff argues that the ALJ determined Plaintiff's mental RFC without obtaining a mental health professional's assessment of Plaintiff's mental RFC. However, Plaintiff is incorrect. Exhibit 4F of the Administrative Record is a Psychiatric Review Technique Form completed by psychologist Joelle J. Larsen, Ph.D. Plaintiff's error is understandable, however, in light of the fact that the ALJ did not assign weight to or in any way refer to this medical opinion. Federal regulation requires the ALJ to evaluate and assign weight to all medical opinions. 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").

### D. The *Chenery* Doctrine

Under the *Chenery* doctrine, an agency's lawyers may not defend an agency's decision on grounds that the ALJ did not cite. *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *see also Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) (applying the *Chenery* doctrine in the social security

16

context). The Commissioner argues (1) it was proper for the ALJ to not consider the side effects of any medications Plaintiff was on because Plaintiff gave conflicting testimony regarding side effects; (2) the fact that Plaintiff never worked diminishes his credibility; (3) Dr. Heyer's first opinion was properly rejected because of the opinion's age, the fact that Dr. Heyer has not been shown to have vocational knowledge, and the opinion's failure to address any functional limitations; and (4) Dr. Heyer's opinion is extreme and unexplained and can therefore be rejected because Dr. Heyer was trying to aid Plaintiff's case for benefits. None of these matters were raised by the ALJ. Consequently, these arguments violate the *Chenery* doctrine and cannot be used to uphold the ALJ's decision.

### E. Request for an Award of Benefits

An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is appropriate.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 14], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

So ORDERED this 22nd day of March, 2016.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY

UNITED STATES DISTRICT COURT